# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WAUKEGAN PORT DISTRICT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.  18 CV 7312 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| NORTH SHORE GAS COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff's motion to remand this action to the Circuit Court of Lake County, Illinois, which is granted in large part for the reasons explained below.

## BACKGROUND

On October 1, 2018, plaintiff, Waukegan Port District (the "Port District"), filed a lawsuit against defendant, North Shore Gas Company ("North Shore Gas" or "NSG"), in the Circuit Court of Lake County, Illinois.  The Port District states in its complaint: "This is a civil action for damages caused by the continuing release of hazardous substances from property owned by NSG into the soil and groundwater of a number of neighboring parcels owned by the Port District."  (ECF No. 1-1, Compl. ¶ 1.)  The Port District further alleges the following. North Shore Gas's South Plant MGP (Manufactured Gas Plant) in Waukegan operated from 1898 to 1927, and then again between 1935 and 1946.  It was demolished in 1951.  The South Plant MGP generated various byproducts and wastes, such as coal tar, ammonia, cyanide, ammonium sulfate, sulfur, wastewater sludges, ash, and tar/oil emulsions.  These materials contain polynuclear aromatic hydrocarbons, petroleum hydrocarbons, heavy metals, and phenolic compounds, several of which are known or suspected carcinogens.  North Shore Gas

released hazardous substances from these byproducts and wastes onto the South Plant MGP parcel and further released and continues to release these hazardous substances onto adjacent and nearby parcels owned by the Port District and others.

North Shore Gas conducted contaminant investigations and limited cleanup activities on its parcel from the early 1990s to around 2003. Most of the work was done under the Illinois Voluntary Site Remediation Program and did not address off-site property contamination. In 2003 or 2004, North Shore Gas removed some of the contaminated soils above the groundwater table from its own property only. It left in place the contamination in soil and groundwater located below the groundwater table on its property, and it did not install any barriers at its eastern property boundaries to prevent continuing releases of contamination onto the Port District's and other neighboring parcels. In 2006, North Shore Gas requested that the South Plant MGP parcel be included in the federal Superfund program. The United States Environmental Protection Agency (the "EPA") accepted the site into the Superfund Alternative program. The South Plant MGP Superfund Site (the "Site"), as defined by the EPA, covers more than twenty acres and includes several properties adjacent to the South Plant MGP parcel, among them eight parcels comprising more than thirteen acres that are owned by the Port District and located east of the South Plant MGP parcel. The Port District's parcels include a marina, a visitor center/administration building, a maintenance building, a marine service facility, landscaped open space and a public park, and asphalt-paved public parking lots.

At the direction of the EPA, and pursuant to a 2007 Administrative Order on Consent under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), North Shore Gas conducted a Remedial Investigation ("RI") of the Site. The RI found that Dense Non-Aqueous Phase Liquid ("DNAPL") hazardous-substance contamination

2

(made up of the substances described above) released as a result of North Shore Gas's operations was a continuing source of contamination to the soil and groundwater of nearby properties. In July 2015, the EPA issued a "Record of Decision for Interim Action" (the "ROD"), which established an interim remedy for the DNAPL contamination beneath the Site. The ROD provides for interim action—the "enhanced recovery of mobile DNAPL using a network of co-located horizontal groundwater injection and DNAPL recovery wells." (ECF No. 1-1 at 171.) Recovered DNAPL is to be collected and shipped off site for treatment and disposal. The ROD estimates that "DNAPL recovery would occur over a[n] 8-year period before the mass and mobility is reduced to the extent practicable." (*Id.* at 194.) The work is projected to begin in 2020. The ROD states that once the work under the interim remedy is completed, the EPA will select a final remedy to address site groundwater and soil contaminants as well as potential soil vapor intrusion risks. (*Id.* at 182.) In September 2015, North Shore Gas and the EPA entered into an Administrative Order on Consent for Remedial Design under CERCLA.

The Port District says that it has never consented to, permitted, or approved of North Shore Gas's continuing contamination and impairment of the use of its property. In June 2017, a Master Plan for Redevelopment of the Port District's marina property was approved. The Port District alleges that the contamination of its property by North Shore Gas has damaged redevelopment efforts. It asserts state-law claims for negligence, trespass, public nuisance, and private nuisance, and it seeks compensatory and punitive damages. On November 1, 2018, North Shore Gas removed the action to this court. It asserts that federal-question jurisdiction

exists under 28 U.S.C. § 1331 because the case "arises under" federal law.[1] The Port District moves to remand the action to state court.

## DISCUSSION

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Citadel Sec., LLC v. Chi. Bd. Options Exch., Inc.*, 808 F.3d 694, 701 (7th Cir. 2015) (some internal punctuation omitted) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 474 (1998)). A federal defense to a claim arising under state law does not suffice to support federal subject-matter jurisdiction. *Id.*; *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800-01 (7th Cir. 2013). North Shore Gas, as the party asserting federal jurisdiction, has the burden of establishing that it exists. *See Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010). Any "[d]oubts regarding removal are resolved in favor of the plaintiff's choice of forum in state court." *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013).

One exception to the well-pleaded complaint rule, known as the complete-preemption doctrine, "provides that, where Congress has completely preempted a given area of state law, a plaintiff's state law claim will be 'recharacterized' as a federal claim so that removal becomes proper." *Hart v. Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan*, 360 F.3d 674, 678 (7th Cir. 2004) (citation omitted). But North Shore Gas disavows any reliance on the complete-

---

[1] The parties are not of diverse citizenship.

preemption doctrine.[2] (ECF No. 26, Def.'s Opp'n Pl.'s Mot. at 12.) It does, however, invoke the artful-pleading doctrine, under which, in broad terms, a plaintiff's omission from its complaint of any reference to federal law will not defeat removal when the plaintiff's claim is necessarily federal. *See Hays v. Bryan Cave LLP*, 446 F.3d 712, 713 (7th Cir. 2006). The Port District's "artful pleading," as North Shore Gas sees it, is that while the Port District's claims are "couched in terms of state law tort claims for damages," they are really a "challenge" to the EPA's interim remedy, over which, North Shore Gas submits, this Court has subject-matter jurisdiction. (Def.'s Opp'n Pl.'s Mot. at 10.)

Even when state law creates a plaintiff's cause of action, "its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) ("[I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law . . . .") (citation omitted). This is a "slim category" of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

According to North Shore Gas, the Port District's right to relief depends on the resolution of a substantial question of federal law. North Shore Gas cites authority from other jurisdictions

---

[2]Understandably so, because complete preemption does not apply here. CERCLA does not wholly displace state-law claims. *Vill. of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 786 (7th Cir. 2008) ("The statutory text states expressly, in several provisions, that at least some claims under state law are permitted to proceed.").

5

for the proposition that a substantial question of federal law may exist where an ostensibly state-law-based claim constitutes a "challenge" to a CERCLA cleanup. (Def.'s Opp'n Pl.'s Mot. at 6 (citing *Coffey v. Freeport-McMoRan Copper & Gold Inc.*, 623 F. Supp. 2d 1257, 1271 (W.D. Okla.) (citing *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1115-16 (9th Cir. 2000)), *aff'd*, 581 F.3d 1240 (10th Cir. 2009)).) Courts of appeals for other circuits have stated that a claim is a "challenge" to a CERCLA cleanup where it is "related to the goals of the cleanup," *Razore v. Tulalip Tribes of Washington*, 66 F.3d 236, 239 (9th Cir. 1995), or it "interferes with the implementation of a CERCLA remedy," *Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1072 (11th Cir. 2002) (citing *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 675 (8th Cir. 1998)).

North Shore Gas contends that the Port District's complaint "reveals that it is, in fact, challenging" the EPA's interim remedy because the complaint is replete with allegations that the interim remedy does not adequately address the contamination of the Port District's property. (Def.'s Opp'n Pl.'s Mot. at 8.) In North Shore Gas's view, the Port District is essentially saying that by *complying* with the EPA's chosen remedy and the consent order, North Shore Gas is violating tort law. North Shore Gas further asserts that a trial on the Port District's claim would necessarily require a factfinder to consider the appropriateness of the EPA's interim remedy; whether North Shore Gas has breached any duties it may owe by implementing the remedy; whether the remedy interferes with the Port District's property rights; and whether North Shore Gas's implementation of the remedy rises to the level of willful and wanton conduct.

The Court does not see it that way. Assuming that the Seventh Circuit would adopt other circuits' approach to "challenges" to CERCLA cleanups in the context of "substantial federal

6

question" jurisdiction,[3] the Port District's suit does not constitute a "challenge" to the EPA's interim remedy such that its tort claims will require resolution of a substantial question of federal law. The Port District seeks the following relief: (1) compensatory damages for loss, impairment, and delay of use of its affected properties; (2) compensatory damages for increased costs of construction and other environmental and risk-management costs that it will incur in improving and building on the parcels affected by the contamination; (3) compensatory damages for permanent diminution in the value of its properties; and (4) punitive damages for the alleged willful and wanton nature of the contamination. (Compl. at 14, Prayer for Relief.) While the Port District in its complaint undoubtedly criticizes the EPA's chosen remedy as inadequate, it does not seek review of that remedy or to alter or add to its terms in any way; it does not seek to be involved in the implementation or supervision of the remedy; and it does not seek equitable or declaratory relief that would interfere with the selected remedial process (indeed, it does not seek *any* equitable or declaratory relief). The Port District seeks only financial compensation, and North Shore Gas fails to explain how that remedy would interfere with the work ordered by the EPA. A "challenge" to a CERCLA cleanup must seek more than the mere payment of money to compensate an affected property owner. *Taylor Farm Ltd. Liab. Co. v. Viacom Inc.*, 234 F. Supp. 2d 950, 976 (S.D. Ind. 2002) (rejecting defendant's argument that state-law environmental claims constituted a "challenge" to a remedial plan and stating that "[a]bout the only sense in which Taylor's lawsuit can be said to 'challenge' Viacom's settlement agreement with the EPA is that, if Taylor is successful, Viacom will be required to spend more money to clean up the

---

[3]North Shore Gas does not cite any Seventh Circuit decisions analyzing what constitutes a "challenge" to a CERCLA cleanup, nor any such decisions analyzing the issue within a "substantial federal question" framework.

land for Taylor's benefit, than the EPA required Viacom to spend for the public's benefit"); *ARCO*, 213 F.3d at 1115 ("[A]n action does not become a challenge to a CERCLA cleanup simply because the action has an incidental effect on the progress of a CERCLA cleanup."); *Atl. Richfield Co. v. Mont. Second Judicial Dist. Ct.*, 408 P.3d 515, 520 (Mont. 2017).

North Shore Gas's attempt to characterize the Port District's complaint as an assertion that "the interim remedy itself breaches duties owed to" the Port District, (Def.'s Opp'n Pl.'s Mot. at 9 (emphasis omitted)), is unpersuasive.[4] The propriety of the relief the Port District seeks will be determined according to state-law tort principles, and it will not require an evaluation of the propriety of the interim remedy. *See Abbo-Bradley v. City of Niagara Falls*, No. 13-CV-487-JTC, 2013 WL 4505454, at *8-9 (W.D.N.Y. Aug. 22, 2013); *Missouri v. Republic Servs., Inc.*, No. 4:15CV1506 RLW, 2016 WL 1688744, at *5-6 (E.D. Mo. Apr. 26, 2016).

All but one of the decisions cited by North Shore Gas in support of its argument that a substantial federal question exists here are distinguishable on the ground that the plaintiffs sought relief other than, or in addition to, money damages—injunctive or other equitable relief, or modification of a remedial plan. The remaining decision, *New Mexico v. General Electric*

---

[4]North Shore Gas also asserts that because the Port District's "only plausible remedy" on its public-nuisance claim "would be limited to injunctive relief," the Port District is therefore "implicitly" requesting injunctive relief. (Def.'s Opp'n Pl.'s Mot. at 11.) That conclusion does not follow. There is no request in the complaint, explicit or implicit, for injunctive relief. Even if there were such a request as to this claim, North Shore Gas fails to explain why the resolution of the issue would create a "substantial" federal question. The relief to which the Port District may be entitled if it prevails on its wholly state-law claim is a matter of state law, not federal law. And a potential determination of whether such relief would conflict with the terms of the interim remedy—the evaluation of an ordinary conflict-preemption defense—is something state courts are "clearly competent to do." *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 405 (7th Cir. 2001); *see also Husko v. Geary Elec., Inc.*, 314 F. Supp. 2d 787, 789 n.4 (N.D. Ill. 2003).

8

*Co.*, 467 F.3d 1223 (10th Cir. 2006), is distinguishable due to its unique procedural posture[5] and the fact that the issue the court confronted was conflict preemption, not whether a substantial federal question was presented. In fact, the Tenth Circuit noted that because the district court had properly exercised supplemental jurisdiction over New Mexico's state-law claims once its federal claims were dismissed, there was no need to reach the issue of "whether CERCLA's involvement with the state law claims was sufficient to warrant the district court's independent exercise of federal jurisdiction." 467 F.3d at 1242 n.29. North Shore Gas attempts to

---

[5]In *New Jersey Department of Environmental Protection v. Minnesota Mining & Manufacturing Co.,* Civ. Action No. 06-2612(NLH), 2007 WL 2027916 (D.N.J. July 5, 2007), the federal district court remanded the case to state court and rejected an argument that a substantial federal question was presented where the plaintiff brought state-law claims (including nuisance and trespass) to recover damages resulting from defendants' contamination of certain property, while a CERCLA cleanup was occurring. The court described the facts of *New Mexico* as follows:

> Defendants also rely on a Tenth Circuit case, *New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1237 (10th Cir. 2006). This case is distinguishable . . . . There, the plaintiffs brought two complaints—one against private defendants under state law, and the other in federal court against the State of New Mexico. The state court action was removed to federal court. After a year of extensive discovery, the plaintiffs filed a motion to dismiss its CERCLA claim as well as all the federal defendants, and also moved for remand. The district court granted the state plaintiffs' motion to dismiss their CERCLA claims and the federal defendants, but it denied their motion for remand. The court explained that "the remaining claims inescapably must be defined in terms of the CERCLA remedy and the scope and extent of the ongoing CERCLA remediation," and that "considerations of economy and convenience in a case over three years old weighed in favor of retaining jurisdiction over the state law claims." *Id.* By this time, the plaintiffs had narrowed their claim for damages to those "not recoverable under CERCLA for groundwater contamination," and by doing so, the "core of the controversy" between the parties had become the intended scope of CERCLA-mandated remedial efforts. *Id.* at 1240. Thus, this case is distinguishable because of its particular procedural posture, as well as the fact that the CERCLA remediation was directly challenged, which Plaintiffs here have not done.

2007 WL 2027916, at *3 n.4.

distinguish the decisions the Port District relies upon, such as *Abbo-Bradley* and *Republic Services*, by arguing that those decisions "solely addressed the historical creation of contamination and the external impact that contamination had on their persons and/or their property." (Def.'s Opp'n Pl.'s Mot. at 10.) But the same can be said of the instant suit. As in *Abbo-Bradley* and *Republic Services*, the reasoning of which the Court finds persuasive, plaintiff's complaint raises issues that are determinable under state-law principles, and to the extent any issues of federal law are presented, North Shore Gas has not shown that they are "substantial." *See Abbo-Bradley*, 2013 WL 4505454, at *9-10. North Shore Gas has failed to meet its burden of demonstrating a basis for the Court to exercise subject-matter jurisdiction over the Port District's claims, so this action will be remanded to state court.

A final matter the Court must address is the Port District's request for an award of attorneys' fees under 28 U.S.C. § 1447(c), which states that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Court may award attorneys' fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Although the Court has held that federal subject-matter jurisdiction does not exist here, the contours of the "substantial federal question" doctrine in the context of CERCLA cleanups are somewhat indistinct, and authority from this circuit is sparse. Because the Court is thus unable to conclude that North Shore Gas lacked a reasonable basis for removal or otherwise acted in bad faith, the Port District's request for attorneys' fees is denied.

## CONCLUSION

Plaintiff's motion to remand this action [13] is granted as to remand and denied as to the request for attorneys' fees. Pursuant to 28 U.S.C. § 1447(c), this case is remanded to the Circuit

Court of Lake County, Illinois, for lack of subject matter jurisdiction. The Clerk of Court is directed to mail a certified copy of the remand order forthwith to the Clerk of the Circuit Court of Lake County, Illinois.

**DATE**: March 4, 2019

_____
**Ronald A. Guzmán**
**United States District Judge**